**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| STEVEN NOFFSINGER, ) | |
| ) | |
| Plaintiff, ) | Case No. 09 C 916 |
| ) | |
| v. ) | Judge Robert W. Gettleman |
| ) | Magistrate Judge Geraldine Soat Brown |
| THE VALSPAR CORPORATION, a ) | |
| Delaware Corporation, d/b/a C&M ) | |
| COATINGS and d/b/a VALSPAR ) | |
| INDUSTRIAL, and ENGINEERED ) | |
| POLYMER SOLUTIONS, INC., d/b/a ) | |
| VALSPAR COATINGS, a Delaware ) | |
| Corporation, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM OPINION AND ORDER

Geraldine Soat Brown, United States Magistrate Judge

Before the court is defendants' Motion to Strike Ross S. Myerson, M.D. and Karin Pacheco, MD., MSPH as Rebuttal Expert Witnesses. [Dkt 112.] For the reasons set out below, the motion is granted in part, denied in part, and denied in part without prejudice.

### BACKGROUND

Plaintiff Steven Noffsinger alleges negligence and strict products liability claims arising from his exposure to fumes emitted by Dynaprime, an industrial solvent-based coating manufactured by defendants. (Pl.'s Am. Compl. ¶¶ 1, 8, 9.) [Dkt 49.] Noffsinger, a former truck driver, alleges that

1

he was hauling drums of Dynaprime from Illinois to California in February 2007 when a defective drum in the truck trailer began leaking and fumes infiltrated the cab of the truck. (*Id.* at ¶¶ 1, 23.) Noffsinger claims that he was exposed to the fumes while sleeping overnight in his cab and that the exposure has caused him ongoing respiratory problems. (*Id.* at ¶ 26.)

Noffsinger was ordered to serve disclosures and reports pursuant to Federal Rule of Civil Procedure 26(a)(2) by March 22, 2010. (Order, Feb. 26, 2010.) [Dkt 61.] On that date he disclosed a number of experts including Dr. James Tita, his treating physician, who has diagnosed Noffsinger with a number of respiratory problems, and Dr. Thomas Milby, a toxicologist who reviewed Noffsinger's medical records and opined that he suffers from Reactive Airways Dysfunction Syndrome (RADS)/irritant induced asthma due to his exposure to Dynaprime. (Defs.' Mot., Ex. A.) As a retained expert, Dr. Milby prepared a report pursuant to Rule 26(a)(2)(B). (*Id.*, Ex. B).

In May 2010, defendants served disclosures and reports from Dr. Michael Greenberg, a toxicologist, and Dr. H. James Wedner, an immunologist, both of whom opined that Noffsinger does not suffer from RADS. (*Id.,* Exs. C, D.) The deadline for rebuttal expert disclosures was ultimately set for October 19, 2010. (Order, Aug. 18, 2010.) [Dkt 108.]

On September 14, 2010, Noffsinger served a supplemental disclosure naming Dr. Karin Pacheco as a treating physician witness (Defs.' Mot., Ex. F), and on October 19, 2010, Noffsinger served a disclosure naming Dr. Pacheco as well as Dr. Ross Myerson as rebuttal experts to rebut the opinions of Drs. Wedner and Greenberg (Defs.' Mot., Ex. G).[1] Defendants now move to strike Drs. Pacheco and Myerson as witnesses, arguing that they are untimely and cumulative "replacement

---

[1] That disclosure also identified Sheldon Mostovoy as a rebuttal expert, but apparently that disclosure is not disputed.
x

experts." (Defs.' Reply at 7.) [Dkt 121.]

**DISCUSSION**

I.  Dr. Pacheco

Dr. Karin Pacheco is a staff physician at the National Jewish Hospital in Denver, Colorado. (Defs.' Mot., Ex. F.) Her proposed role in this case has been ambiguous from the start, and Noffsinger's response to the present motion does not clarify it.

Dr. Pacheco's name first appeared in the record in a joint motion to extend discovery. [Dkt 103.] The motion recited that on July 25, 2010, Noffsinger had traveled to Denver to "undergo a comprehensive series of tests at National Jewish Hospital . . . under the auspices" of Dr. Pacheco, and that he "intends to continue under her care." (*Id*. ¶ 4.) But it further said, "Plaintiff also intends for Dr. Pacheco to prepare a Rule 26(a)(2)(B) [report] rebutting Drs. Greenberg and Wedner's opinions." (*Id.*) At the time the parties made their expert disclosures, Rule 26(a)(2)(A) required disclosure of any witnesses a party might use at trial to present evidence under Federal Rule of Evidence 702, 703 or 705, but only witnesses "retained or specially employed to provide expert testimony in the case" or employees whose duties regularly involved giving expert testimony were required to prepare a report. Fed. R. Civ. P. 26(a)(2) (A-B).[2] Thus, the motion equivocated on the question of whether Noffsinger saw Dr. Pacheco for treatment or in anticipation of her testifying as a retained expert.

In September 2010, Noffsinger disclosed Dr. Pacheco as a treating physician "pursuant to"

---

[2] Rule 26 was amended effective December 1, 2010, to add additional disclosures in the case of a witness who does not have to write a report. *See* Rule 26(a)(2)(C), as amended effective Dec. 1, 2010. That amendment is not relevant to this opinion.

3

Federal Rule of Civil Procedure 26(a)(2)(A). (Defs.' Mot., Ex. F.) But Noffsinger's disclosure also referred to Dr. Pacheco's "records and report, which have been previously produced." (*Id*.) A month after disclosing Dr. Pacheco as a treating doctor, Noffsinger disclosed her as a rebuttal expert, using Dr. Pacheco's "Occupational/Environmental Clinic Summary" and "Clinic Summary Follow Up" (which are attached as Exhibit I to defendants' present motion) as her expert witness report, supplemented with a list of her prior testimony and her fee schedule. (Defs.' Mot., Ex. G at 2.)

Now, in response to the present motion, Noffsigner says, "Plaintiff does not intend to call Dr. Pacheco as a rebuttal witness. Plaintiff will call her solely in his case in chief as a treating physician." (Pl.'s Resp. at 9.) [Dkt 117.] But Noffsinger also says, "Defendants have been fully aware that [Dr. Pacheco] would be disclosed as a treater and that Plaintiff also intended to disclose her as rebuttal witness." (*Id*. at 10.) To add to the confusion, Noffsinger states that he disclosed Dr. Pacheco as a rebuttal witness "as a formality." (*Id*. at 10 n. 2.)

This ambiguous history raises a number of issues regarding Dr. Pacheco's proposed testimony: whether the disclosure was timely, whether Dr. Pacheco is actually Noffsinger's treating physician, and what, if any, is the scope of her permissible testimony.

A. <u>Timeliness</u>

Noffsinger's disclosures relating to Dr. Pacheco were not timely. Noffsinger's expert disclosures, except for rebuttal witnesses, were to be served by March 22, 2010. An extension of time was later obtained for defendants' expert disclosures and for disclosing rebuttal expert reports, but Noffsinger never sought or obtained leave to disclose an additional expert witness for his case in chief. (*See* Dkt 81, 83, 90, 103, 107, 108.)

4

Disclosures of expert witnesses, including treating physicians, must be made at the times and in the sequence ordered by the court. Fed. R. Civ. P. 26(a)(2)(D) [formerly 26(a)(2)(C)]; *Musser v. Gentiva Health Servs.*, 356 F.3d 751, 756-57 (7th Cir. 2004). Failing to disclose an expert witness by a court-ordered deadline results in an automatic and mandatory exclusion of the witness, unless the non-disclosure was justified or harmless. Fed. R. Civ. P. 37(c)(1); *Musser*, 356 F.3d at 758.

Noffsinger argues, incorrectly, that the disclosure of Dr. Pacheco was timely as a supplemental disclosure under Federal Rule of Civil Procedure 26(e). (Pl.'s Resp. at 9-10.) That rule requires a party to supplement an earlier disclosure when a party learns that the disclosure was incomplete or incorrect, but it "does not give the producing party a license to disregard discovery deadlines and to offer new opinions under the guise of the 'supplement' label." *Amari v. C.R. England, Inc.*, No. 1:07-CV-1616-WTL-TAB, 2010 WL 2943686 at *2 (S.D. Ind. July 21, 2010) (internal quotations omitted); *see also Butler v. Sears Roebuck & Co.*, No. 06 C 7023, 2010 WL 2697601 at *1 (N.D. Ill. July 7, 2010) (duty to supplement "does not allow a party to tender wholly new expert opinions"). A new expert, especially one who conducts new tests and writes a new report, is not "supplementation." "[T]he concept of a supplemental report suggests that the supplemental opinions will be the opinions of the expert who prepared the original report, not the opinions of a different expert." *Gilbane Bldg. Co. v. Downers Grove Community High Sch. Dist. No. 99*, No. 02 C 2260, 2005 WL 838679 at *9 (N.D. Ill. Apr. 5, 2005). Moreover, supplementary disclosures are "not intended to provide an extension of the expert designation and report production deadline." *Amari*, 2010 WL 2943686 at *2 (quoting *Metro Ford Truck Sales, Inc. v. Ford Motor Co.*, 145 F.3d 320, 324 (5th Cir. 1998)).

Conceivably, a plaintiff could begin treatment with a new treating physician after the

5

disclosure deadline has passed. In that case, the plaintiff would be required to update previous discovery responses with the new information and the updated medical records. However, to call the new doctor to testify in the plaintiff's case in chief after the deadline for disclosing expert witnesses has passed would require leave of court to serve an untimely disclosure under Rule 26(a)(2), because even treating doctors must be formally disclosed as experts. *Musser*, 356 F.3d at 758. Here, Noffsinger did not seek such leave. Instead, he tried to bring Dr. Pacheco in under the deadline for rebuttal witnesses and then to switch her role after the fact.

Because the disclosure of Dr. Pacheco was untimely, her testimony must be excluded unless the delay was justified or harmless. *See* Fed. R. Civ. P. 37(c)(1). The following factors guide a court's analysis: (1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date. *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

Weighing these factors, the court concludes that the late disclosure of Dr. Pacheco as an expert witness for Noffsinger's case in chief cannot be characterized as "harmless." As recounted above, Noffsinger has continually equivocated about Dr. Pacheco's status. Although defendants were informed in July 2010 of Noffsinger's examination by Dr. Pacheco and received Dr. Pacheco's reports before defendants' experts were deposed, she was then described as a rebuttal witness. The difference between an expert's testimony in a party's case in chief and in rebuttal is significant. As discussed below, a rebuttal expert's testimony is limited. If the evidence a plaintiff presents at trial during his case in chief is insufficient as a matter of law, the defendant may move for judgment as matter of law under Federal Rule of Civil Procedure 50 after the plaintiff closes his case. Changing

6

a proposed expert's status from rebuttal witness to testimony in the plaintiff's case in chief is a significant alteration.

Whether the late disclosure is "justified" depends in part on whether Dr. Pacheco is actually treating Noffsinger. It is possible that a plaintiff could, in good faith, seek new treating physicians for medical reasons during the course of litigation, even after expert disclosures have been made. In that case, the plaintiff's request to call that new treating doctor as a Rule 26(a)(2)(A) witness in his case in chief might be justified. Here, however, there is a factual dispute about whether Dr. Pacheco is actually Noffsinger's treating physician. If Dr. Pacheco examined Noffsinger solely for the purpose of litigation, there is no justification for her untimely disclosure.

### B. Is Dr. Pacheco actually treating Noffsinger?

Defendants point to the timing and circumstances of Noffsinger's visit to Dr. Pacheco to support their argument that she is not a proper Rule 26(a)(2)(A) witness. They argue that her records do not "bear the characteristics of a treating physician. Rather, it appears Dr. Pacheco was engaged to provide a medical causation opinion . . . ." (Defs.' Mot. at 1.)

According to Noffsinger's response to the present motion, Dr. Tita was his treating physician from May 20, 2007 (3 months after the occurrence) until July 25, 2010. (Pl.'s Resp. at 2.) "Discouraged by the lack of progress of his symptoms," Noffsinger sought treatment from Dr. Pacheco in Denver, Colorado in July 2010 because National Jewish Hospital is regarded as a top respiratory hospital. (*Id.* at 3.) Defendants assert that it is no coincidence that the consultation with Dr. Pacheco followed the depositions of Noffsinger's originally-disclosed experts. In defendants' view, Noffsigner was sent to Dr. Pacheco by his attorneys not for treatment, but rather in an effort

7

to shore up his case after defendants exposed problems in Dr. Milby's expert report and testimony. (Defs.' Reply at 7.) Notably, Noffsigner has not submitted any affidavit or other evidence regarding his reasons for seeking out Dr. Pacheco. Statements by counsel in briefs are not evidence. *U.S. v. Stevens*, 500 F.3d 625, 628-29 (7th Cir. 2007).

Dr. Pacheco's records show characteristics of both a treating physician and an expert hired to opine about causation. The reason cited for Noffsinger's three-day visit to the clinic is "[e]valuation for difficulty with breathing and cough, and whether diagnosis is work-related." (Occupational/Environmental Clinic Summary at 1.) The records do not indicate a referral from a physician, and Noffsinger's attorneys were copied on the reports. (*Id*. at 11; Clinic Summary Follow Up at 4.) The last two pages of Dr. Pacheco's Clinical Summary Follow Up read much like a report from a retained expert. (*See* Clinic Summary Follow Up at 4-5.) Dr. Pacheco opined "to a reasonable degree of medical certainty" that Noffsinger developed RADS and vocal cord dysfunction (VCD) caused by his exposure to Dynaprime fumes. (*Id.* at 4.) She also reviewed the reports of defendants' experts Drs. Wedner and Greenburg and responded with reasons why she believes Noffsinger meets the clinical criteria for a RADS diagnosis. (*Id.* at 3.) Those aspects of Dr. Pacheco's report resemble those of a witness "retained or specially employed to provide expert testimony." *See* Fed. R. Civ. P. 26(a)(2)(B).

On the other hand, there are also indications of treatment. For example, Dr. Pacheco evaluated Noffsinger's medical history, work history, and symptoms, and conducted a physical examination. (Occupational/Environmental Clinic Summary at 1-4.) She noted her impressions and ordered a number of diagnostic tests. (*Id.* at 10.) After reviewing the results of those tests, Dr. Pacheco made several diagnoses, including RADS and irritant-induced vocal cord dysfunction.

8

(Clinic Summary Follow Up at 1-3.) She prescribed a course of treatment and medication and recommended a follow-up visit after three months to evaluate his progress and to schedule a sleep study. (*Id.* at 1.)

Although Noffsinger states that Dr. Pacheco "will continue" to provide treatment to him (Pl.'s Resp. at 9), there is no evidence – in the form of affidavit or records – to show that Noffsinger has, in fact, followed the treatment recommended by Dr. Pacheco or that he made and kept the follow-up appointment three months after the July 2010 appointment. The question of how and by whom Dr. Pacheco is being paid is also potentially relevant, and certainly discoverable because Noffsinger's claim for damages includes medical expenses. (*See* Am. Compl. ¶ 32.) Defendants suggest that Dr. Pacheco is being paid by Noffsigner's counsel (Defs.' Reply at 9), but no evidence has been submitted about payment.[3]

The materials submitted do not resolve the factual question of whether Dr. Pacheco is actually one of Noffsinger's treating physicians, or whether, as defendants suggest, the "treatment" is a facade by which Noffsigner hopes to bolster his case in chief in circumvention of the federal rules and discovery deadlines. Contrary to Noffsinger's argument, defendants' joining in the August 2010 motion to extend discovery (to allow defendants' experts to review Dr. Pacheco's records before their depositions) cannot fairly be considered an acknowledgment that Dr. Pacheco is actually treating Noffsinger. (See Pl.'s Resp. at 5.) As defendants point out, they had no information about Dr. Pacheco at that time except Noffsinger's representations. (Defs.' Reply at 9-10.)

Defendants' motion to strike is granted as it relates to any possible testimony by Dr. Pacheco

---

[3] That Dr. Pacheco has a schedule of fees for services as a retained expert does not prove that she was retained for testimony, as opposed to treatment, in this case.

9

as a Rule 26(a)(2)(B) witness, whether on rebuttal or as part of Noffsinger's case in chief. Noffsigner has disclaimed any intention to call her as a rebuttal witness, and he does not make any argument why he should be permitted to call her as a retained expert in light of the untimeliness of her disclosure.

The motion to strike Dr. Pacheco as a Rule 26(a)(2)(A) witness is denied without prejudice. If, following Dr. Pacheco's deposition, defendants believe the evidence does not support Dr. Pacheco's status as a bona fide treating physician but rather demonstrates that she was retained for the purpose of litigation, they may renew their motion to strike.

### C. Limitations of Rule 26(a)(2)(A) testimony

If Dr. Pacheco is permitted to testify as a treating physician, her testimony is limited by Rule 26(a)(2)(A). A treating physician disclosed under Rule 26(a)(2)(A) may only testify about the treatment provided and the diagnosis. *See Meyers v. Natl. R.R. Passenger Corp.*, 619 F.3d 729, 734 (7th Cir. 2010); *see also Griffith v. N.E. Ill. Regl. Commuter R.R. Corp.*, 233 F.R.D. 513, 518-19 (N.D. Ill. 2006) (holding that a physician who has been disclosed pursuant to Rule 26(a)(2)(A) may testify as to the nature and extent of the injury he observed and diagnosed, and the treatment that he rendered for that injury). In that capacity, the physician is testifying about she saw and did and why she did it. *Krischel v. Hennessy*, 533 F.Supp. 2d 790, 795 (N.D. Ill. 2008). However, "a treating physician who is offered to provide expert testimony as to the cause of the plaintiff's injury, but who did not make that determination in the course of providing treatment, should be deemed to be one 'retained or specially employed to provide expert testimony in the case,' . . . ." *Meyers,* 619 F.3d at 734-35.

10

The causation issue is hotly contested in this case. (*See* Joint Status Report at 1.) [Dkt 28.] Dr. Pacheco's opinion that Noffsinger's condition was caused by Dynaprime exposure, her review of defendants' experts' reports, and her response to those reports were patently prepared for purposes of this lawsuit, and went beyond what was necessary to evaluate and treat Noffsinger's condition. (*See* Clinical Summary Follow Up at 3-4.) The court in *Meyers* anticipated the possibility that such "devices" might be used to avoid Rule 26(a)(2)(B)'s requirements, as "when a lawyer refers a client to a particular physician for both treatment and a causation opinion that the lawyer expects will be useful in litigation. In such cases, the physician might arguably be 'retained or specially employed to proved expert testimony . . . .'" *Meyers*, 619 F.3d at 735 n. 3.

Even if Dr. Pacheco is a bona fide treating physician, the untimely disclosure limits her, at most, to testimony about the scope of treatment and does not include what she reviewed for litigation. To allow her to opine on topics like causation and prognosis would permit Noffsinger to circumvent the March 22, 2010 deadline for the expert disclosures, which would be neither harmless nor justified.[4]

II. <u>Dr. Myerson as a rebuttal witnesses</u>

Defendants contend that Dr. Myerson, like Dr. Pacheco, is not properly characterized as a rebuttal witness because his report is a "full scale, substantive report[] on the issue of medical causation" not limited to addressing the findings of defendants' experts. (Def.'s Mot. at 5.) Defendants argue that the time has passed for Noffsinger to offer expert evidence to support his case

---

[4] That Dr. Pacheco prepared a report that might satisfy Rule 26(a)(2)(B) does not change the result. That report was disclosed long after the March 22, 2010 deadline for expert disclosures.

in chief, and that Dr. Myerson should be stricken as a rebuttal witness. (*Id.*)

"The proper function of rebuttal evidence is to contradict, impeach or defuse the impact of the evidence offered by an adverse party." *Peals v. Terre Haute Police Dept.*, 535 F.3d 621, 630 (7th Cir. 2008) (quoting *U.S. v. Grintjes*, 237 F.3d 876, 879 (7th Cir. 2001)). If, as here, the court's scheduling order permits rebuttal experts and reports, a party may submit an expert rebuttal witness who is "limited to contradicting or rebutting evidence on the same subject matter identified by another party in its expert disclosures." *Butler*, 2010 WL 2697601 at *1 (internal quotations omitted) (citing Fed. R. Civ. P. 26(a)(2)(C)). However, a party may not offer testimony under the guise of "rebuttal" only to provide additional support for his case in chief. *Peals*, 535 F.3d at 630. "The plaintiff who knows that the defendant means to contest an issue that is germane to the prima facie case (as distinct from an affirmative defense) must put in his evidence on the issue as part of his case in chief." *Braun v. Lorillard, Inc.*, 84 F.3d 230, 237 (7th Cir. 1996)

Dr. Myerson's report goes beyond the scope of a proper rebuttal witness. (*See* Defs.' Mot., Ex. H, Myerson Rpt.) Dr. Myerson examined Noffsinger and reviewed his medical records and history. (*Id.* at 1-10.) Dr. Myerson also studied the MSDS (material safety data sheet) for Dynaprime and opined on its effects on brain, nervous system and respiratory system. (*Id.* at 15.) He concluded that Noffsinger developed RADS and VCD as a result of his exposure to organic solvent based paint fumes. (*Id.* at 15-16.) That is an expert report and opinion on issues for which Noffsinger bears the burden of proof as part of his prima facie case. Noffsinger cannot, at this late date, attempt to introduce another expert witness to bolster his case in chief.

However, some parts of Dr. Myerson's report can fairly be deemed as responding to the conclusions of defendants' experts Drs. Weder and Greenberg, and to that extent Dr. Myerson may

12

be permitted as a timely rebuttal witness. Dr. Myerson reviewed and critiqued the reports of defendants' experts Drs. Wedner and Greenberg, challenging their methodology and the evidence on which they relied. (*Id*. at 12-14.) In situations like this, the appropriate course is to limit the proposed rebuttal expert's testimony rather than striking it altogether. *See, e.g., L.G. Elecs. U.S.A., Inc. v. Whirlpool Corp.*, No. 08 C 242, 2010 WL 3397358 at *13-15 (N.D. Ill. Aug. 24, 2010); *Commw. Ins. Co. v. Stone Container Corp.*, No. 99 C 8471, 2002 WL 385559 at *6-7 (N.D. Ill. Mar. 12, 2002). Accordingly, defendants' motion is granted in part and denied in part. The testimony of Dr. Myerson as a rebuttal witness is limited to his critique of defendants' experts' opinions as set out on page 12-14 of his report.

Defendants alternatively argue that Dr. Myerson's opinion should be stricken under Federal Rule of Evidence 403, which provides for the exclusion of evidence that, while relevant, would be needlessly cumulative. "Multiple expert witnesses expressing the same opinions on a subject is a waste of time and needlessly cumulative. It also raises the unfair possibility that jurors will resolve competing expert testimony by 'counting heads' rather than evaluating the quality and credibility of the testimony." *Sunstar, Inc. v. Alberto-Culver Co., Inc.*, Nos. 01 C 0736 and 01 C 5825, 2004 WL 1899927 at *25 (N.D. Ill. Aug. 23, 2004).

Dr. Myerson's expert opinion does not appear to be cumulative when limited to material that is properly rebuttal, as is here ordered. But that decision need not be reached at this stage, because Federal Rule of Evidence 403 is "not a rule pertaining to the discovery or motion practice stage of the case. Rather, it is a rule governing the trial stage of the case." *Sunstar*, 2004 WL 1899927 at *24. Whether evidence is unnecessarily cumulative is an issue for trial and within the prerogative of the trial judge, as illustrated by the cases cited by defendants. Those cases report rulings on motions

*in limine* brought to exclude witnesses from testifying at trial. *See Sunstar,* 2004 WL 1899927; *Merrill Lynch Business Fin. Servs., Inc. v. Gray Supply Co., Inc.*, Nos. 91 C 1449 and 91 C 1554, 1991 WL 278305 (N.D. Ill. Dec. 23, 1991).

## CONCLUSION

For the foregoing reasons, defendants' Motion to Strike Ross S. Myerson, M.D. and Karin Pacheco, MD., MSPH as Rebuttal Expert Witnesses is granted in part, denied in part, and denied in part without prejudice, as follows:

1. The motion is granted as it relates to any possible testimony by Dr. Pacheco as a Rule 26(a)(2)(B) witness, whether on rebuttal or as part of Noffsinger's case in chief.

2. The motion to strike Dr. Pacheco as a Rule 26(a)(2)(A) witness is denied without prejudice. If, following Dr. Pacheco's deposition, defendants believe the evidence does not support Dr. Pacheco's status as a bona fide treating physician but rather demonstrates that she was retained for the purpose of litigation, they may renew their motion to strike.

3. If Dr. Pacheco is permitted to testify as a Rule 26(a)(2)(A), her testimony will be limited to her treatment and diagnosis of Noffsinger, and not to causation.

4. The motion is granted to strike Dr. Myerson's testimony except for the portions that are properly rebuttal, which are set out on pages 12, 13 and 14 of his report.

The parties are directed to complete the depositions of Dr. Pacheco and Dr. Myerson as soon as possible.

**IT IS SO ORDERED.**

_____
Geraldine Soat Brown
United States Magistrate Judge

January 3, 2011