**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS--EASTERN DIVISION**

| | |
|---|---|
| STEVEN NOFFSINGER, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>)<br>THE VALSPAR CORPORATION, a Delaware )<br>Corporation, d/b/a C&M COATINGS and d/b/a )<br>VALSPAR INDUSTRIAL, and ENGINEERED )<br>POLYMER SOLUTIONS, INC., d/b/a )<br>VALSPAR COATINGS, a Delaware Corporation, )<br>)<br>Defendants. ) | Case No. 09 C 916<br><br>Judge Robert W. Gettleman<br><br>Magistrate Judge Geraldine<br>Soat Brown |

**PLAINTIFF'S MOTION TO BAR SUPPLEMENTATION OF RULE 26(a)(2)(B) DISCLOSURES OF DR. MICHAEL GREENBERG, DR. JAMES WEDNER, AND JOEL COHEN**

Plaintiff, STEVEN NOFFSINGER, by his attorneys, David A. Axelrod, Robert A. Cohen, and Jason M. Kleinman, for his Motion to Bar Supplementation of Rule 26(a)(2)(B) Disclosures of Dr. Michael Greenberg, Dr. James Wedner, and Joel Cohen, states as follows.

1. Plaintiff, Steven Noffsinger ("Noffsinger"), has been unable to breathe normally since his February 17, 2007 exposure to Dynaprime paint manufactured by Defendants. He filed this case on February 12, 2009. The case is presently ready to be set for trial.

2. Discovery, including all expert discovery, was closed by this Court as of December 29, 2010. Thereafter, on June 30, 2011, Defendants filed a Motion to Exclude Testimony From Plaintiff's Expert Witnesses and for Summary Judgment. On March 15, 2012, this Court entered an Order denying Defendants' <u>Daubert</u> Motions and accompanying request for summary judgment.

3. On April 18, 2012, this Court held a status conference. At that time, counsel for Defendants requested the opportunity to conduct certain discovery in order to determine Noffsinger's condition since discovery had closed approximately one year earlier. As a result, this

Court entered an Order re-opening discovery until July 30, 2012. Further, at that status hearing, Defendants' counsel advised the Court that Defendants intended to file a motion to preclude Dr. Karin Pacheco from testifying at trial on the basis that she is not a treating physician for Noffsinger but an expert witness who was not timely disclosed.

    4.  Since entering the April 18, 2012 Order, the following events have taken place:

    A.  On Friday, May 18, 2012, the last business day before Noffsinger's Supplemental Deposition was to be conducted, Defendants disclosed that they had engaged in videotape surveillance of Noffsinger, and that such videotaping had been on-going since January 2011 without any prior disclosure by Defendants. Further, at that time, Defendants failed to produce any of the videotapes or surveillance reports, claiming that they were privileged. (A copy of the May 18, 2012, disclosures from the Defendants is attached as Exhibit A);

    B.  On May 21, 2012, Defendants took Noffsinger's supplemental deposition. During the deposition, in relevant part, Noffsinger testified as follows:

      1.  That he continues to suffer from the respiratory symptoms that have plagued him for years. His activities are restricted as follows:

        a.  He is permanently disabled. May 21, 2012 Deposition of Steve Noffsinger ("Noffsinger Dep."), p. 16 (a copy of the relevant portions of the Noffsinger Dep. is attached as Exhibit B.).

        b.  He cannot vacuum his home without difficulty. Noffsinger Dep., p. 32.

        c.  Humidity causes him to be symptomatic and have a bad day. Noffsinger Dep., pp. 57, 67-68.

      d.  He cannot engage in his former livelihood, professional truck driving. Noffsinger Dep, p. 42.

      e.  His ability to engage in recreational gun shooting is limited. Noffsinger Dep., p. 53. He cannot clean his guns with oil-based materials. Noffsinger Dep., p. 54.

      f.  Showers always cause him to be symptomatic and have a bad day. Noffsinger Dep., pp. 57-58.

      g.  He cannot walk long distances without difficulty. Noffsinger Dep., p. 66.

   2. That it was his decision to seek additional testing and treatment from Dr. Pacheco at National Jewish Hospital. Noffsinger Dep., p. 94. Noffsinger testified that he had heard of National Jewish Hospital from his pulmonologist, Dr. James Tita, and also from two different doctors who had treated him. Id. Dr. Tita told Noffsinger that "the best place in the world to go is National Jewish Health Hospital." Id. Noffsinger explained to his attorneys that he wanted to go to National Jewish Health "for the possibility of getting better . . . all I wanted is to get better." Id., at p. 95. Within one or two months, Noffsinger visited Dr. Pacheco for the first time. Id.

   3. Dr. Pacheco's treatment has been helpful to Noffsinger. Noffsinger Dep., p. 61. Noffsinger continues to treat with Dr. Pacheco as his primary physician for the treatment of his condition of RADS, continuing to see Dr. Tita solely as his local physician, Noffsinger Dep., pp. 90-91.

   4. Noffsinger has, on rare occasions, smoked or taken a puff or two of a cigarette, and has smoked nicotine-free smokeless electronic cigarettes. Noffsinger Dep., pp. 72-75.

      C.      On June 12, 2012, Defendants took the supplemental deposition of Dr. James Tita, in Toledo, Ohio. During his deposition, in relevant part, Dr. Tita testified to the following:

      1.      That he is still of the opinion that Noffsinger suffers from RADS as a result of his exposure to Dynaprime paint fumes on February 17, 2007. June 12, 2012 Deposition of James Tita, M.D. ("Tita Dep."), pp. 54, 65. (A copy of the relevant pages of Dr. Tita's Supplemental Deposition is attached as Exhibit C).[1]

      2.      That Noffsinger's condition of RADS is chronic, with his symptoms persisting on a constant basis. Tita Dep., p. 59.

      3.      That Noffsinger is permanently and totally disabled due to RADS. Tita Dep., p. 74.

      4.      That Dr. Pacheco, of National Jewish Hospital in Denver, Colorado, has been Noffsinger's primary physician with respect to treatment of his condition of RADS since July 2010. Tita Dep., p. 65.

      4.      That Dr. Tita continues to treat Noffsinger as his local physician but that Dr. Pacheco has been determining Noffsinger's treatment plan since July 2010 and that the only reason Dr. Tita prescribes Noffsinger's medications is because Dr. Tita has a license to practice medicine in the State of Ohio and Dr. Pacheco does not. Tita Dep., pp. 73-74.

      D.      Defendants finally produced the surveillance videotapes and accompanying reports on June 13, 2012. The videotapes and reports cover dates from January 25, 2011 through

---

[1] This testimony is entirely consistent with the testimony that Dr. Pacheco gave during her depositions. Specifically, Dr. Pacheco testified that she is Noffsinger's treating physician for his condition of RADS and that she does not act as an expert witness. May 19, 2011 Deposition of Karin Pacheco, M.D., pp. 9-10, 86-88. (A copy of the relevant portions of the Pacheco Deposition is attached as Exhibit D.)

May 27, 2012, the day before Defendants finally disclosed their surreptitious investigation and videotaping of Noffsinger. The videotapes and reports confirm that Noffsinger does not work, that he spends the vast majority of his time in his home and that his lifestyle is that of a shut-in; and

    E. At the depositions of the private investigators taken in Columbus, Ohio on July 24, 2012, it was also disclosed that Defendants had hired the investigators to do neighborhood canvassing in an attempt to further investigate Noffsinger's condition. The canvassing was performed on June 25, 2012. The canvassing has confirmed Noffsinger's condition. Defendants have been unable to find even one witness who contradicted Noffsinger. In fact, investigator Anton Longalong admitted during his deposition that Noffsinger lives the life of a "shut-in." (The deposition of Longalong has not yet been received.)

  5. On Friday, July 27, 2012, just one business day before extended discovery was set to close, Defendants' counsel wrote a letter to Noffsinger's counsel indicating a unilateral decision to "update" three of their experts' Rule 26(a)(2)(B) disclosures:

> "We have provided Valspar's expert witnesses—Joel Cohen, Michael Greenberg, M.D., and James Wedner, M.D.—with transcripts of Mr. Noffsinger's most recent deposition. We expect these witnesses to update their prior opinions and reports to reflect Mr. Noffsinger's new testimony about his cigarette smoking and his use of electronic cigarettes. We anticipate they will provide supplemental reports in the next thirty days."

(A copy of the July 27, 2012 letter from Terri Bruksch to David Axelrod, is attached as Exhibit E.) The July 27, 2012 letter was sent over two months following the supplemental deposition of Noffsinger and seven weeks after the supplemental deposition of Dr. Tita.

  6. When this Court entered its Order re-opening discovery on April 18, 2012, there was nothing in that Order which permitted any further expert discovery. Further, Defendants have not sought leave of this Court to make any sort of "update" or amendment to any of its expert witness

disclosures. Instead, Defendants appear to believe that they are permitted to supplement their expert discovery without leave of Court and after the current date for closing discovery.

7.Even if Defendants were to seek leave of court, such permission should not be granted. Supplementation of expert opinion is governed by Rule 26(e) of the Federal Rules of Civil Procedure, which requires that new information "not otherwise made known to the other parties" be disclosed, if that information "in some material respect" renders the response or disclosure "incomplete or incorrect:"

> (e) Supplementing Disclosures and Responses.
>
> > (1) In General. A party who has made a disclosure under Rule 26(a)-- or who has responded to an interrogatory, request for production, or request for admission--must supplement or correct its disclosure or response:
> >
> > > (A) in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing; or
> > >
> > > (B) as ordered by the court.

Federal Rules of Civil Procedure, Rule 26(e)(1). Rule 26(e) serves to allow supplementation of an opinion that requires the new information in order to maintain its vitality, but does not allow supplementation to bolster existing opinions. Supplementation is designed to disclose new information in the hands of the supplementing party that is not known to the other party, and then only to correct any misleading aspect of the previously disclosed report that has been rendered inaccurate or misleading:

> a party is under a duty to supplement at appropriate intervals any disclosures made if it learns that in some material respect the information previously disclosed was incomplete or incorrect, and if the additional or corrected information has not otherwise been disclosed to the parties during the discovery process. Fed.R.Civ.P.

> 26(e). However, Pfeifer does not contend that Dr. Ames' original report contained errors that needed to be corrected, nor does he seek to withdraw any prior opinions submitted. This is not a situation where, subsequent to the preparation of the original report, new information was discovered which required that the original report be supplemented because the original opinion was no longer correct.

Beller v. U.S., 221 F.R.D. 689, 694-695 (D.N.M. 2003). Noffsinger's new testimony is not a matter known only to Valspar that must be disclosed pursuant to Rule 26(e). Not one of Defendants' expert opinions require any such supplementation based on Noffsinger's new testimony. Not one of these disclosures are rendered incomplete or inaccurate by Noffsinger's new testimony.

    8.    Defendants have now indicated their unilateral attempt to supplement their expert disclosures, without leave of court, and after the date for closure of discovery. Further, any such supplemental disclosures would not be proper in this case:

    A.    Dr. Greenberg, a toxicologist, testified that in his opinion Noffsinger is a smoker, and his symptoms are caused not by RADS, but by smoking. (October 5, 2010 Deposition of Michael I. Greenberg, M.D., pp. 21-24, 30, 33, 60-61. The relevant pages of Dr. Greenberg's deposition are attached as Exhibit F.) Noffsinger's testimony that he has taken a few puffs of tobacco, and has used electronic cigarettes, serves at most to do nothing more than bolster Dr. Greenberg's disclosure. Thus, there is no need for Dr. Greenberg to supplement his disclosure, and the proposed "updated" opinion is not authorized by Rule 26(e);

    B.    Dr. Wedner testified that a CT scan of Noffsigner's lungs show evidence of respiratory disease caused by smoking. September 20, 2010 Deposition of James Wedner, M.D. ("Wedner Dep."), p. 57. The relevant pages of Dr. Wedner's deposition are attached as Exhibit G. He testified that Mr. Noffsinger does not have RADS. Wedner Dep., p. 40). He testified that Noffsinger has vocal cord dysfunction, that was not caused by the Dynaprime exposure. Wedner Dep., pp. 51, 78. Again, nothing in Noffsinger's May 21, 2012 testimony does anything more than

bolster Dr. Wedner's disclosure. Dr. Wedner should not be permitted to provide any new disclosure; and

        C.    Joel Cohen is an industrial hygienist who opined that, in his qualitative opinion, the Dynaprime exposure could not have created a harmful concentration of solvent vapors. May 24, 2010 Disclosure of Joel Cohen ("Cohen Disclosure"), pp. 5-9. (The relevant pages of Mr. Cohen's disclosure are attached as Exhibit H.) Mr. Cohen's disclosure was concerned solely with the exposure pathway and exposure scenario existing on February 17, 2007. Nothing that transpired after that time has any relevance to Mr. Cohen's exposure. Noffsinger's recent testimony is not germane to Mr. Cohen's disclosure, and cannot serve as a basis for an "updated" opinion.

9.    Defendants are seeking merely to improve the opinions of Drs. Greenberg and Wedner. As nothing has developed that renders their opinions more or less accurate, Defendants are not permitted to do that. As to Mr. Cohen's disclosure, he is not a physician and never offered a medical opinion. There is no conceivable application of Noffsinger's new testimony to Mr. Cohen's exposure analysis, and Defendants cannot supplement his opinion.

10.    As a result of motions previously filed by Defendants in this case, this Court has already entered Orders restricting the potential testimony of Dr. Pacheco (despite her status as Noffsinger's primary treating physician since July 2010) and denied Noffsinger's request to supplement the opinions of Dr. Milby (which, unlike the current situation, was attempted by seeking the approval of this Court). This Court should not permit this late and improper attempt to supplement expert reports by the Defendants.

11.    Alternatively, if Defendants are permitted to have expert discovery re-opened, then Noffsinger should also be permitted to submit supplemental disclosures, including those of Dr. Pacheco and Dr. Milby. Dr. Pacheco has been Noffsinger's treating physician for two years.

Defendants have been aware of Dr. Pacheco's status as Noffsinger's treating physician, and her opinions, since September 2010. There is no surprise or prejudice to the Defendants to permitting these supplemental disclosures by Noffsinger, particularly in light of Defendants' unilateral attempt to disclose supplemental opinions of their experts.

WHEREFORE, Plaintiff, STEVEN NOFFSINGER, prays this Court enter an Order as follows:

- A. Barring Defendants from supplementing the Rule 26(a)(2)(B) disclosures of Dr. Michael Greenberg, Dr. James Wedner, and Mr. Joel Cohen; or
- B. Re-opening expert discovery and permitting the disclosures of Dr. Karin Pacheco and the Supplemental Disclosure of Dr. Thomas Milby; and
- C. For any such other and further relief as this Court deems just and proper.

STEVEN NOFFSINGER

By: /s/ David A. Axelrod
One of Plaintiff's Attorneys

David A. Axelrod
Robert A. Cohen
Jason M. Kleinman
David A. Axelrod & Associates, P.C.
20 S. Clark Street, Suite 2200
Chicago, IL 60603
(312) 782-4600