**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS---EASTERN DIVISION**

| | | |
|---|---|---|
| STEVEN NOFFSINGER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | Case No. 09-CV-916 |
| THE VALSPAR CORPORATION, a Delaware | ) | |
| Corporation, d/b/a C&M COATINGS and d/b/a | ) | |
| VALSPAR INDUSTRIAL, and ENGINEERED | ) | Judge Robert W. Gettleman |
| POLYMER SOLUTIONS, INC., d/b/a | ) | |
| VALSPAR COATINGS, a Delaware Corporation, | ) | |
| | ) | Magistrate Geraldine Soat Brown |
| | ) | |
| Defendants. | ) | |

**MOTION *IN LIMINE* NO. 4 TO BAR TESTIMONY AND OPINIONS OF JAMES
WEDNER, M.D., REGARDING QUANTIFICATION-BASED TOXICOLOGICAL
SOURCE-EXPOSURE-DOSE-EFFECT ANALYSIS**

Plaintiff STEVEN NOFFSINGER, through his attorneys, David A. Axelrod, Robert A. Cohen, and Jason Kleinman, moves *in limine* to Bar Testimony and Opinions of James Wedner, M.D. Regarding Quantification-Based Toxicological Source-Exposure-Dose-Effect Analysis, and in support of this Motion Plaintiff states as follows.

1. A motion *in limine* is a motion "to exclude anticipated prejudicial evidence before the evidence is actually offered." Luce v. United States, 469 U.S. 38, 41 n. 2, 105 S.Ct. 460, 462 (1984). Motions *in limine* may be made before or during trial. Id. The purpose of a motion *in limine* is for the Court to rule on the relevancy and admissibility of evidence prior to the evidence being offered at trial. Id.; Federal Rules of Evidence 104(a).

2. Plaintiff, Steven Noffsinger ("Noffsinger"), has sued The Valspar Corporation ("Valspar"), alleging that he suffered Reactive Airways Dysfunction Syndrome ("RADS") under

the legal theories of negligence and strict products liability. Specifically, Noffsinger alleges that he suffered respiratory injury when he was exposed to volatile organic compound fumes emanating from Valspar's Dynaprime paint that leaked from Valspar's defective Dynaprime drum that Valspar loaded into Noffsinger's truck trailer. Noffsinger alleges that he inhaled the Dynaprime fumes while sleeping in the cab of his truck, causing him to contract RADS.

3. It is expected that Valspar will offer testimony or other evidence from its expert James Wedner M.D. ("Wedner"), consistent with the Expert Report ("Report") submitted as part of Wedner's undated Rule 26(a)(2)(B) disclosure, attached as Exhibit A, and September 20, 2010 deposition ("Wedner Deposition"), relevant portions of which are attached as Exhibit B.

4. As this Motion concerns opinions relating to quantification-based toxicological source-exposure-dose-effect analysis, the Report is relevant only insofar as it contains no opinions relating to those topics. As such, Wedner should be barred from offering any opinions relating to quantification-based toxicological source-exposure-dose-effect analysis on the grounds that Valspar did not timely disclose any such opinions.

5. However, at Wedner's deposition, Wedner gave the following answers to the following questions:

> "Q. Okay. Would you think he might have it if he was atopic, based on all the information you have in front of you?
>
> A. Well, I -- from my reading of all of the medical records, including the type of exposure he had, I don't think he had much of an exposure. And I don't think that he has significant either induced asthma of any kind.
>
> Q. Okay. When you say based on the medical records you've reviewed you don't think he had much of a -- stop, strike that. Let's just close the door on that question. So the answer is no, you wouldn't, even if you were atopic, you would not find that he had not so sudden onset.

2

A. Correct.

Q. Okay. So classic or not so sudden, he had -- doesn't have RADS as far as you're concerned.

A. Correct.

Q. Okay. Now as to not so sudden onset, one of the reasons you just articulated was that you didn't feel he had such a great exposure.

A. Correct.

Q. Okay. And what is your basis for saying that?

A. Well, and I can't quote the, the part of the record in which they noted what was the amount of exposure, but my understanding is that it was a relatively, it was some paint fumes over a fairly short period of time, he wasn't directly exposed to them, it was underneath his trailer, and it was not a particularly high level exposure.

Q. Well, I understand you say you can't quote where in the records they gave an indication as to what the amount of the exposure was, but if I represented to you that there's nowhere in any record indicating what the amount of the exposure is, would that surprise you?

A. The exact amount, no. I don't think – I don't think anyone knows.

Q. All right, okay. So how do you know that it wasn't a large exposure?

A. There, there is somewhere, and that's what I can't quote for you, in the record where someone commented upon the relative amount, and I can't put my finger on it right at the moment.

Q. Doctor, the only places that I'm aware of where anybody has made any sort of analysis along those lines are in the third party expert reports that Valspar has commissioned. Do you think you might be relying on one of those?

A. I'm sure I read it somewhere, and I can't tell you where.

Q. Okay.

A. So I wish I could, but -- I have those, I may have read, I probably read them there, and that's the basis for that opinion, yes.

. . .

3

>   Q. Okay. Well, let's continue, let's continue with the criteria that Dr. Pacheco went through. Number 3 refers to exposure in high concentrations, exposure to an irritant in high concentrations. I take it you have now given me your opinion as to whether that --
>
>   A. Correct.
>
>   Q. -- criterion is met.
>
>   A. I don't think that occurred.
>
>   Q. Okay. And that's based on the third party reports.
>
>   A. Correct."

Exhibit B, 43:1-45:7, 47:2-13.

6. Wedner also gave the following testimony, in which he conceded that, contrary to his disclosure and his previous testimony, measurements of the concentration and dose necessary to cause RADS are not used to determine whether an exposure constitutes a dose sufficient to cause RADS:

>   "Q. Well, I understand you say you can't quote where in the records they gave an indication as to what the amount of the exposure was, but if I represented to you that there's nowhere in any record indicating what the amount of the exposure is, would that surprise you?
>
>   A. The exact amount, no. I don't think -- I don't think anybody knows.
>
>   . . .
>
>   Q. Okay. Have you --
>
>   A. I don't, it's certainly not in his medical records, and I'm not trying to tell you it is.
>
>   Q. Okay. But you are giving an opinion that you think it was not a high dose.
>
>   A. Correct.
>
>   Q. Okay. You did not give that opinion in your original paper, in your original document --

4

    A.    No.

    Q.    -- you, in fact, you bypass the question of causation entirely, because you felt he didn't have asthma.

    A.    Correct, I still don't.

    Q.    Okay. Okay. So this is a new opinion.

    A.    Well, no, I mean you're asking me a question because we're talking about RADS. I mean my opinion hasn't changed.

Exhibit B, 44:8-44:15, 45:8-45:24.

    7.    Wedner's deposition testimony at Exhibit B, 43:1-44:7, 44:16-45:7, 47:2-13, cited in Paragraph 5 above, should be excluded for two reasons. First, as noted above, Valspar did not disclose a causation opinion in this case from Wedner at the time for written Rule 26(a)(2)(B) disclosures. Wedner has admitted that he made no such disclosure. Exhibit B, 45:11-17. Wedner also offered no opinion as to whether a RADS-level exposure took place, offering the opinion that it did not for the first time in his deposition.

    8.    As a second reason for excluding the testimony set forth in Paragraph 5, this Court has determined that medical differential etiology can be relied upon as the basis for proving causation. See, March 15, 2012 Memorandum Opinion and Order (Dkt. No. 217) ("Opinion"), p.10 (attached hereto as Exhibit C). This Court has ruled that Noffsinger may rely upon differential etiology, in which "'the doctor rules in all the potential causes of a patient's ailment and then by systematically ruling out causes that would not apply to the patient, the physician arrives at what is the likely cause of the ailment.'" Opinion, p. 10, citing, Myers v. Illinois Central Railroad Co., 629 F.3d 639, 644 (7th Cir. 2010). Noffsinger may rely on this methodology to prove causation:

> The Seventh Circuit has clearly stated that "[t]here is nothing controversial about" differential etiology. Id.; see also Lemmermann

5

>v. Blue Cross Blue Shield of Wis., 713 F.Supp.2d at 809 n. 21 (criticizing RADS expert's failure to use differential diagnosis methodology as "sloppy and indicative of an unreliable method"). Defendants have offered nothing that casts doubt on that conclusion or its application to a RADS diagnosis in particular.

Opinion, p. 10.

8. Insofar as is relevant here, this Court's ruling has an effect beyond merely identifying one of several methodologies that may be employed to determine causation. It is not disputed that the exact level of Noffsinger's exposure to Dynaprime cannot be quantified. See, May 24, 2010 Report of Joel Cohen, Opinion One, p. 5 (excerpt attached as Exhibit D). Because of the specific circumstances of this case, including the undisputed determination that it is impossible to utilize a traditional toxicological analysis to determine whether Noffsinger ingested a "medically significant" dose, differential etiology is the only option for proving causation. This Court acknowledged that in RADS cases, it is virtually impossible to gather the type of toxicological exposure-dose data that Wedner asserted could not be determined:

>[B]ecause almost all instances [of RADS onset] are accidental, the recording of concentrations is not possible. Thus, it is not possible to quantify the magnitude of the irritant exposure necessary to cause RADS. . . . [A] precise level of exposure to an irritant is not part of the medical diagnosis fo RADS.

Opinion, pp. 9-10 (citations to medical literature and quotation marks omitted). In other words, only non-quantitative methods, such a differential etiology, can be used to prove causation in a RADS case. This Court specifically rejected Valspar's claim that traditional toxicological methods must be utilized in order to prove causation in a chemical exposure case. Opinion, p. 6 ("As an initial matter, there is no support for Defendants' proclaimed "Seventh Circuit standard for proving medical causation in chemical exposure cases").

9. The fact that there is no dispute that Noffsinger's exposure cannot be quantified, together with this Court's Opinion, bars Valspar's experts from testifying to a causation standard that this Court has recognized is not available in a RADS case. Valspar is of course free to challenge Noffsinger's differential etiology. Valspar cannot, however, argue to the jury that Noffsinger has failed to meet a burden that cannot be met in a RADS case. Valspar is setting up a straw man that must always be knocked down. This Court has determined that a quantitative methodology will almost never be attainable in a RADS case, and both sides in this case agree that such a showing is impossible. Allowing Wedner to testify that Noffsinger has been unable to prove a proposition that no one questions is incapable of proof is not a legitimate attack on Noffsinger's differential etiology. Wedner's opinions and testimony are not probative of any issues in this case, are prejudicial, and should be barred pursuant to Federal Rules of Evidence, Rules 401 and 403.

WHEREFORE, Plaintiff, STEVEN NOFFSINGER, moves this Court for an Order *in Limine* barring the testimony and opinions of James Wedner, M.D. regarding Quantification-Based Toxicological Source-Exposure-Dose-Effect Analysis, set forth in Dr. Wedner's September 20, 2010 deposition, 43:1-44:7, 44:16-45:7 and 47:2-47:13, cited above in Paragraph 5, and 44:8-44:15 and 45:8-45:24, cited above in Paragraph 6, and for such other and further relief as this Court may deem just and proper.

                                          STEVEN NOFFSINGER

                                          By:    /s/ David A. Axelrod
                                                      One of his Attorneys

David A. Axelrod
Robert A. Cohen

Jason Kleinman
DAVID A. AXELROD & ASSOCIATES, P.C.
20 S. Clark Street, Suite 2200
Chicago, IL 60603
(312) 782-4600