IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| STEVEN NOFFSINGER, | ) | |
| | ) | |
| Plaintiff, | ) | No. 09 C 0916 |
| v. | ) | |
| | ) | Judge Robert W. Gettleman |
| THE VALSPAR CORPORATION, a Delaware | ) | |
| Corporation, d/b/a C&M COATINGS and d/b/a | ) | |
| VALSPAR INDUSTRIAL, and ENGINEERED | ) | |
| POLYMER SOLUTIONS, INC., d/b/a | ) | |
| VALSPAR COATINGS, a Delaware Corporation, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Steven Noffsinger filed a three-count amended complaint alleging that defendant Valspar Corporation ("Valspar") is liable for injuries plaintiff allegedly suffered when he was exposed to a leaking container of Dynaprime, one of Valspar's products, during a cross-country shipment. Specifically, plaintiff alleges that defendant is liable under a theory of strict product liability due to a defectively manufactured drum (Count One); that defendant was negligent in evaluating and using a defective drum (Count Two); and that defendant was negligent under a theory of res ipsa loquitur (Count Three). Defendant has filed a motion for summary judgment on all counts, arguing that the Hazardous Materials Transportation Act ("HMTA") and the Hazardous Material Regulations ("HMR") preempt plaintiff's claims.[1] For the reasons described below, defendant's motion is granted.

---

[1]In advance of trial, defendant filed a "Brief Regarding Plaintiff's Proposed Jury Instructions," which essentially argued that plaintiff's proposed instructions, which cited the HMTA and HMR as a basis for liability, were inappropriate and a misstatement of federal law and regulations. Due to the nature of these arguments, the court converted defendant's "brief" into a motion for summary judgment on the basis of federal preemption.

# BACKGROUND[2]

On February 13, 2007, Valspar shipped seventy-two 55-gallon steel drums containing Dynaprime, a solvent-based coating manufactured by Valspar. MCT Transportation was retained to deliver the shipment to a warehouse in Santa Fe Springs, California. Plaintiff, an over-the-road truck driver, was directed by MCT Transportation to pick up and transport the lot of drums. Plaintiff arrived to pick up the shipment at Valspar's manufacturing facility in Kankakee, Illinois, at 3:30 p.m. CST on the afternoon of February 13, 2007. Valspar personnel loaded the drums onto plaintiff's trailer in 18 rows consisting of four drums in each row. The drums used in the shipment were reconditioned by Mid-America Steel Drum Company, Inc. ("Mid-America"). After the drums were loaded by Valspar personnel, plaintiff stepped inside the trailer and applied two load locks to the last row of drums nearest the trailer doors. Plaintiff visually checked the load and then left and went outside. Once the trailer doors were closed, plaintiff applied the trailer door seal provided to him by defendant.

On February 17, 2007, at around 8:55 a.m. CST, plaintiff's dog, Boomer, who traveled with plaintiff, woke him up. Upon waking, plaintiff detected a strong smell of paint fumes. Plaintiff exited his truck and found yellow paint dripping from the left front (driver's side) drain or ventilation hole of the trailer onto the left side tires and the asphalt pavement. Plaintiff also found paint leaking out of the drain holes at the two rear corners of the trailer and onto the stone and dirt ground. Plaintiff contacted the dispatcher at MCT Transportation from the Flying J Truck Stop in Barstow, California, to report a leak from the shipment. Approximately three hours after plaintiff contacted MCT Transportation, the Barstow Fire Protection District arrived

---

[2]The following facts are, unless otherwise specified, undisputed.

at the Flying J Truck Stop. A representative for Emergency Response Training Solutions arrived at the scene approximately one hour later. The Dynaprime that leaked came from a crack in the bottom of one of the steel drums inside the trailer.

Plaintiff has sued defendant for injuries he allegedly sustained as a result of the leak. Count One alleges that the drum was defectively manufactured and was in an unreasonably dangerous condition, and that defendant is liable under a theory of strict product liability. Count Two alleges that defendant was negligent for: (1) failing to determine whether the drum was free of defects that might compromise the drum's integrity; (2) using the defective drum; (3) failing to act in a reasonably careful and prudent manner by delegating to its drum supplier defendant's duty to ensure that its drums were sufficient for safe transportation of its hazardous product; and (4) failing to take necessary precautions to ensure that the drum was sufficiently sound to contain Dynaprime. Count Three alleges that, under a theory of res ipsa loquitur, defendant must have been negligent because the leak occurred and the drum was in the exclusive control of defendant.

## DISCUSSION

### I. Legal Standard

A movant is entitled to summary judgment under Rule 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. See Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Unterreiner v. Volkswagen of Am., Inc., 8 F.3d 1206, 1209 (7th Cir. 1993). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assocs., Inc., 914 F.2d 107, 110 (7th Cir.

1990).  The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion.  See Green v. Carlson, 826 F.2d 647, 650 (7th Cir. 1987); Fisher v. Transco Services–Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Stewart v. McGinnis, 5 F.3d 1031, 1033 (7th Cir. 1993).  The nonmoving party must, however, do more than simply show that there is some metaphysical doubt as to the material facts.  Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

## II.    Preemption

Defendant argues that the Department of Transportation's regulations expressly preempt any claim that Valspar should have undertaken any steps with respect to the Dynaprime shipment that are different from or in addition to those mandated by the HMTA or the HMR.  The HMTA was enacted in 1975 and amended in 1990 and 2005.  The Act empowers the Secretary of Transportation to "prescribe regulations for the safe transportation, including security, of hazardous materials in intrastate, interstate, and foreign commerce." 49 U.S.C. § 5103(b)(1).  Pursuant to this authority, the Department of Transportation ("DOT") promulgates the HMR. 49 C.F.R. §§ 171–180.605.  The regulatory scheme constructed by the HMTA and HMR controls during the interstate movement of hazardous materials, as well as during various other stages of transportation. 49 C.F.R. § 171.1(a)–(c).  Because Congress enacted the HMTA

4

with the purpose of developing "a uniform national scheme of regulation regarding the transportation of hazardous materials," defendant argues that the federal scheme preempts any state laws placing responsibilities on shippers not outlined in the HMTA and HMR. Roth v. Norfalco LLC, 651 F.3d 367, 370 (3d Cir. 2011). The parties do not contest that Dynaprime is a hazardous material covered by the HMTA, and plaintiff concedes that he must identify a duty set forth in the regulations that defendant is alleged to have breached to impose any liability.

To avoid preemption, plaintiff argues that defendant violated duties set forth in the HMR and HMRA, specifically 49 C.F.R. §§ 173.24(b), 173.30, and 177.834, and thus is liable to plaintiff for his alleged injuries.[3]

The first regulation, 49 C.F.R. § 173.24(b), states in relevant part: "Each package used for the shipment of hazardous materials under this subchapter shall be designed, constructed, maintained, filled, its contents so limited, and closed, so that under conditions normally incident

---

[3]Plaintiff bases his arguments regarding the alleged HMR and HMTA violations on a theory that the leak cam from a crack in the bottom of one of the drums, which was caused when Valspar employees loaded the drum onto a stone, rock or other sharp object in the bed of plaintiff's truck. Plaintiff argues that this version of events is supported by the conclusions reached in the opinion of Valspar's expert Richard Lynch, Ph.D. (Who was not deposed by plaintiff), and the parties argue at length about the admissibility of this report ("the Lynch report"). Plaintiff argues that the Lynch report constitutes a party admission and is binding on Valspar. Valspar argues that the report is inadmissible. Reports of this nature are usually considered hearsay and are inadmissible. Thakore v. Universal Machine Co. of Pottstown, 670 F. Supp. 2d 705, 725 (N.D. Ill. 2009). Further, the court disagrees with plaintiff's characterization of the "conclusions" reached in the report; the Lynch report clearly states that "[t]he actual cause of the crack cannot be absolutely determined as the drum is not available for forensic examination and there is insufficient information for a fully definite determination." The court also notes that the issue of the Lynch report is immaterial because there is no allegation anywhere in the complaint that the leak resulted from negligence related to the loading of the drums; plaintiff has consistently alleged that the leak was the result of a defect in the drum itself. However, given the court's conclusion that plaintiff has not identified any federal regulation that defendant may have violated, the court need not rule on the admissibility of the report.

to transportation– . . . there will be no identifiable (without the use of instruments) release of hazardous materials to the environment." Plaintiff asserts that this regulation appears in the Part of the HMR entitled "Shippers – General Requirements for Shipments and Packagings," and that defendant is therefore responsible for the tasks set forth within. Specifically, plaintiff argues that the shipper does not have to be the entity that actually designs, constructs, maintains or fills the package, but the shipper is responsible for making sure those things are done in compliance with the HMTA and HMR to assure that the package is safe. Plaintiff further argues that the shipper can seek indemnification from another entity responsible for a third-party's injuries resulting from violations of this regulation, and notes that otherwise, injured parties would be left with no recourse when they had no ability to know that a vendor was used by the shipper. This argument is of critical importance to plaintiff because two of the three counts in plaintiff's complaint allege that defendant is liable based on the defective nature of the drum and defendant's alleged negligence in evaluating the drum prior to shipment. If the regulatory scheme does not hold defendant responsible for the manufacture and certification of the drum, then plaintiff's first two counts related to the allegedly defective condition of the drum are preempted.

The court finds plaintiff's argument regarding § 173.24(b) unpersuasive. As defendant notes, the first section of Part 173 explicitly states that "this part includes: ... Inspection, testing, and retesting responsibilities for persons who retest, recondition, maintain, repair and rebuild containers used or intended for use in the transportation of hazardous materials." 49 C.F.R. §173.1(a)(3). Therefore, the Part cannot be read to relate solely to shippers' responsibilities because it explicitly references the responsibilities of manufacturers and reconditioners as well. Further, a reading of the entirety of § 173.24(b) demonstrates that it does not impose these duties

on shippers, but rather sets out the general requirements for packaging and packages. The responsibilities of shippers are set out in other sections of Part 173, namely §§ 173.22 and 173.24a.[4]

Additionally, other sections of Part 173 make it clear that it is not the responsibility of the shipper to design, construct, or maintain the containers, as plaintiff argues. Section 173.22(a)(3)(i) states that, in making the determination of whether a container "has been manufactured, assembled, and marked in accordance with" the relevant regulations, a shipper may accept "the manufacturer's certification, specification, approval, or exemption or special permit marking." Defendant was therefore entitled to rely on the reconditioner's mark when it accepted the drum in question and is not ultimately liable for any potential defects attributable to the reconditioner. Count One, which alleges strict product liability based on the allegedly defective drum, is therefore preempted by the regulatory scheme, which places responsibility for the container on the manufacturer or reconditioner of the drum. Similarly, plaintiff's claim that defendant was negligent because it used a defective drum, inadequately inspected the drum, and/or delegated its responsibilities to the reconditioner must fail on the same basis. The regulations demonstrate that defendant was entitled to delegate responsibility for testing and

---

[4]Section 173.22 is entitled "Shipper's responsibility" and states that a shipper "shall class and describe the hazardous material in accordance with parts 172 and 173 of this subchapter, and . . . shall determine that the packaging or container is an authorized packaging, including part 173 requirements, and that it has been manufactured, assembled, and marked in accordance with" the relevant regulations. Section 173.24a details the requirements for packages, including inner packaging closures, the nature and thickness of the outer packaging, securing and cushioning the packagings, prohibitions of metallic devices, and requirements to withstand vibration.

certifying the drum to the reconditioner, and the court may not impose liability contrary to those regulations. Count Two is therefore preempted as well.

Plaintiff endeavors to identify other regulations that defendant potentially violated that may serve as the basis for liability. He first argues that defendant violated section 173.30, which states that "[a] person who is subject to the loading and unloading regulations in this subchapter must load or unload hazardous materials into or from a transport vehicle or vessel in conformance with the applicable loading and unloading requirements of parts 174, 175, 176, and 177 of this subchapter." This general section creates no particular responsibilities for shippers, but rather simply references the more specific subsections that do impose duties, including all of Part 177, which governs "Carriage by Public Highway." Because this section prescribes no specific duties, it may not serve as the basis of liability against defendant.[5]

Plaintiff does identify a more specific subsection in Part 177 that he alleges defendant violated: § 177.834. That section states that "any package containing any hazardous material, not permanently attached to a motor vehicle, must be secured against shifting, including relative motion between packages, within the vehicle on which it is being transported, under conditions normally incident to transportation. Packages having valves or other fittings must be loaded in a manner to minimize the likelihood of damage during transportation." That subsection does not

---

[5]Further, it is not clear that Section 173.30 applies to defendant. Plaintiff argues that these duties should be ascribed to defendant because defendant loaded the drum, but the regulation clearly states that it applies to a "person who is subject to the loading and unloading regulations in this subchapter." Plaintiff, as the carrier, is unquestionably subject to the loading and unloading regulations. To extend these duties to any individual who loads shipments could extend liability beyond the intended reach of the regulation. Because the court finds that there is no corresponding violation of § 177.834, it need not address whether § 173.30 applies to defendant.

specifically identify the party responsible for compliance, but Part 177 contains a subpart that addresses compliance with Part 177 in general.

The first subsection of Part 177 details the purpose and scope of the Part and states that "[t]his part prescribes requirements, in addition to those contained in parts 171, 172, 173, 178 and 180 of this subchapter, that are applicable to the acceptance and transportation of hazardous materials by private, common, or contract carriers by motor vehicle." § 177.800(a). That subsection is clear that primary responsibility for these transportation-related regulations is on the carrier. Subsection 177.800(b) states that "[u]nless this subchapter specifically provides that another person shall perform a particular duty, each carrier, including a connecting carrier, shall perform the duties specified and comply with all applicable requirements in this part . . . ."

Therefore, under § 177.800(b), the carrier is responsible for compliance with §177.834 and §177.30. Although it is undisputed that Valspar personnel loaded the drums, the regulations dictate that plaintiff (or his employer) is responsible for compliance with the loading requirements of the HMR and HMTA. Section 173.30 does not mandate that a shipper perform loading or unloading duties, and therefore does not relieve the carrier of the responsibility to perform those duties. Further, plaintiff inspected the loaded drums and accepted the shipment.

Nor is the defendant liable under the language of §177.834 itself, as plaintiff alleges. The first requirement, which mandates that a party secure the packages against shifting, is not specifically imposed on shippers or carriers. In the instant case, there is no dispute that plaintiff applied the lock loads to the drums, thereby securing the packages against shifting during transportation. There is no allegation that defendant was involved in securing the drums. Plaintiff's argument that the requirement that a party "secure" the packages against shifting also

9

includes loading the packages in the correct manner is too broad an interpretation of the language of the regulation, and the court rejects this argument. There is no allegation that defendant failed to properly secure the packages in the shipment as required by the regulation. Therefore, plaintiff cannot assert that defendant is liable under the first part of § 177.834.

The second responsibility articulated in § 177.834 is related to packages with valves or fittings. Plaintiff argues that the drums had valves or fittings, and that defendant is liable for violating the regulation because it failed to load the packages in a manner that minimized the likelihood of damage. However, plaintiff again overreaches with the interpretation of the regulation. The specific mention of the valves and fittings indicates that the regulation requires special care to be taken related to those fittings. Yet, plaintiff's amended complaint does not allege that defendant took any action related to valves or fittings, and there is no allegation that the leak in the drum in question was in any way related to valves or fittings on the container (if there were any). Indeed, until the latest round of briefs, plaintiff's claim has consistently been that the base of the drum was defective. Plaintiff therefore cannot credibly assert that defendant is liable under the second part of § 177.834.

In sum, plaintiff has not identified any provision of the HMTA or HMR that defendant has violated. Because the HMTA and HMR preempt state law claims related to the transport of hazardous substances, and plaintiff cannot establish a violation of those regulations, plaintiff's complaint presents no viable claim to this court. The court therefore grants defendant's motion for summary judgment on all counts.

## **CONCLUSION**

For the reasons described above, the court grants defendant's motion for summary judgment on all counts.


**ENTER:** July 24, 2014

_____
**Robert W. Gettleman
United States District Judge**